```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/5/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA RAAD, STEPHANIE RAAD, and
DAVID RAAD,

                                    Plaintiffs,

                -against-

BANK AUDI S.A.L.,

                                    Defendant.

1:20-cv-11101 (MKV)

ORDER GRANTING
MOTION TO DISMISS THE
AMENDED COMPLAINT

MARY KAY VYSKOCIL, United States District Judge:

        Plaintiffs, three family members who deposited large sums of money with Defendant Bank

Audi, bring this suit for breach of contract.  After Defendant's first motion to dismiss the Amended

Complaint was granted, the Second Circuit vacated the judgment and remanded, finding that the

relevant agreement's forum-selection clause was permissive, and it was therefore error to rely on

the presumption of enforceability to dismiss on *forum non conveniens* grounds.  Defendant has

now renewed its motion to dismiss the Amended Complaint, reasserting lack of personal

jurisdiction, *forum non conveniens*, and failure to state a claim.  For the reasons set forth below,

Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED.

## BACKGROUND

**Factual Background[1]**

        This is one of several cases in this District stemming from the Lebanese financial crisis

that began in 2019.  *See, e.g.*, *Elghossain v. Bank Audi S.A.L.*, 2023 WL 6390160 (S.D.N.Y. 2023)

(granting motions to dismiss for lack of personal jurisdiction); *Moussaoui v. Bank of Beirut & the*

*Arab Countries*, 2023 WL 5977239 (S.D.N.Y. 2023) (granting motion to dismiss for lack of

---

[1] The facts stated herein are drawn from Plaintiffs' Amended Complaint, ECF No. 22 ("Am. Compl."), and are assumed
to be true for the purpose of the Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

personal jurisdiction); *Kreit v. Byblos Bank S.A.L.*, No. 22-CV-10751, 2023 WL 6977448 (S.D.N.Y. 2023) (granting motion to dismiss for lack of personal jurisdiction).

Plaintiff Patricia Raad and her late husband Michel Raad have been clients of Defendant Bank Audi s.a.l. ("Bank Audi") for more than 30 years. Am. Compl. ¶ 16. Bank Audi S.A.L is one of the largest banks in Lebanon. Am. Compl. ¶ 8. In the late 1980s, when Ms. Raad married Mr. Raad, she opened bank accounts in U.S. dollars with Bank Audi, both in Lebanon and in New York, where she was living with her husband, and where the Bank was established as Bank Audi (USA).[2] Am. Compl. ¶ 17. Since then, Ms. Raad has entrusted Defendant with all her financial matters, personal and business. Am. Compl. ¶ 17.

In 2006, Patricia's late husband set up a trust at Bank Audi, *in Lebanon*, to the benefit of their children, Stephanie and David Raad. Am. Compl. ¶ 18. Ten years later, Stephanie and David each opened accounts with Bank Audi, *in Lebanon*, for the purpose of receiving the trust's principal at expiration, allegedly "under the understanding" that Bank Audi would transfer the funds to New York at their first demand. Am. Compl. ¶ 19. Subsequently, Stephanie and David both opened bank accounts at Interaudi Bank (formerly Bank Audi (USA)) in New York for the purpose of transferring the trust funds from Lebanon to New York upon receipt. Am. Compl. ¶ 20.

In 2018, the trust expired, and Bank Audi divided the trust's principal between the Raad children and distributed it to both Stephanie and David through their accounts with Bank Audi *in Lebanon*. Am. Compl. ¶ 21. At that time, and allegedly based on Bank Audi's representations, Stephanie and David agreed to transfer only a small portion of their funds to their New York

---

[2] Defendant asserts that "[t]here is no such entity as 'Bank Audi (USA) in New York.' " Def. Br. at 5 n.2. Defendant states that "Banque Audi Suisse (not the Bank) had a minority shareholding interest in Interaudi Bank until 2005, when it divested its interest and sold all common shareholding stakes," and "[t]hey have had no connection or relation since that time." Def. Br. at 5 n.2; Declaration of Assad Meouchy ¶ 9.

accounts with Interaudi Bank and deposited the remainder of their funds into monthly term deposit accounts with Bank Audi *in Lebanon*.  Am. Compl. ¶ 22.

In October 2019, Plaintiffs requested that Bank Audi transfer $17,494,000 of Plaintiffs' funds to their Interaudi (formerly Bank Audi (USA)) bank account in New York.  Am. Compl. ¶ 24.  Bank Audi allegedly agreed and provided Plaintiffs with orders indicating scheduled transfers of Plaintiffs' funds to New York.  Am. Compl. ¶ 24.  Ultimately, though, those transfers never occurred.  Am. Compl. ¶ 28.  Plaintiffs thereafter addressed a demand letter to Bank Audi, which Bank Audi purportedly did not answer.  Am. Compl. ¶ 29.  Plaintiffs assert that Bank Audi is obligated to immediately transfer the $17,623,674, currently being held in Lebanon, to Plaintiffs in New York.  Am. Compl. ¶ 30.

**Banking Crisis in Lebanon**

Beginning in October 2019, at the same time the Raads requested Bank Audi to transfer funds to their New York accounts, Lebanon began undergoing "various regional political conflicts and severe economic depression," which has since severely impacted its banking sector. Declaration of Makram Sader [ECF No. 69] ("Sader Decl.").  In response to the crisis, and in order to safeguard the national financial system, in late 2019, Lebanon's banking regulator (Central Bank) declined to make funds available to banks for transfers abroad, despite the large deposits of over 70 billion U.S. dollars that the banks held with the Central Bank.  Sader Decl. ¶ 9.  As a result of this Central Bank policy, Lebanon-based banks were unable to make transfers of funds abroad except for the limited and exceptional purposes authorized by the Central Bank.  Sader Decl. ¶ 9.[3]

---

[3] *See also Daou v. BC Bank, S.A.L.*, No. 20-cv-4438, 2021 WL 1338772, at *1 (S.D.N.Y. 2021) (explaining that Lebanon's banks closed for a period of time in 2019 and subsequently imposed restrictions on withdrawals and transfers from Lebanese bank accounts to overseas accounts), *aff'd*, 42 F.4th 120 (2d Cir. 2022).  The Second Circuit elaborated on the cause of the crisis in an opinion affirming the dismissal of a case similar to this case.  *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 126 (2d Cir. 2022).  In relevant part, the Court of Appeals stated:

Plaintiffs allege that, as a result, Bank Audi did not honor their request that their funds be transferred to the United States.  Am. Compl. ¶¶ 24, 28.

## PROCEDURAL HISTORY

Plaintiffs commenced their breach of contract action in the Commercial Division of New York Supreme Court, County of New York.  [ECF No. 1].  Defendant subsequently removed the case to federal court based on diversity jurisdiction.  [ECF No. 1].  Defendant then filed a motion to dismiss the Amended Complaint asserting lack of personal jurisdiction, *forum non conveniens*, and failure to state a claim.  [ECF No. 25].  Judge Nathan, to whom the case was then assigned, granted Defendant's motion to dismiss on *forum non conveniens* grounds after concluding that the parties' controlling agreement contained a valid, mandatory forum-selection clause conferring exclusive jurisdiction to Beirut courts.  *Raad v. Bank Audi S.A.L.*, No. 20-cv-11101, 2021 WL 4482285 (S.D.N.Y. 2021).

On appeal, the Second Circuit vacated the judgment and remanded, finding that the forum-selection clause contained no specific language of exclusion clearly designating Beirut courts as having *exclusive* jurisdiction, and it was therefore error to rely on the presumption of enforceability to dismiss for *forum non conveniens*.  *Raad v. Bank Audi SAL*, No. 21-2612, 2022 WL 17684581, at *3 (2d Cir. 2022).  The action was then reassigned to this Court for further proceedings consistent with the Second Circuit's summary order.

Subsequently, Defendant renewed its motion to dismiss the Amended Complaint, reasserting the same grounds: lack of personal jurisdiction, *forum non conveniens*, and failure to

---

In late 2019, Lebanon's financial sector began spiraling into crisis. Starting in the 1990s, the Lebanese pound ("LBP") had been pegged to the U.S. dollar, an arrangement that required a steady influx of USD into Lebanon to maintain. But in response to political unrest in 2019 that resulted in the prime minister's resignation, foreign investors began to pull out of the country, causing the influx of USD to dry up. The LBP began to plunge in value, . . . and the Lebanese banking sector tried desperately to prevent a run on the banks, first by temporarily closing the country's banks, and then by making it nearly impossible to remove large quantities of USD from the country.

4

state a claim.  [ECF No. 64].  In support of its motion, Defendant filed, *inter alia*, a Memorandum of Law [ECF No. 65] ("Def. Br."), a declaration of counsel [ECF No. 66], a declaration of Defendant's expert in Lebanese law [ECF No. 68], and a declaration of Defendant's expert in Lebanon's economic condition [ECF No. 69].  Plaintiffs opposed the motion with a Memorandum of Law [ECF No. 77] ("Opp."), a declaration of counsel [ECF No. 74], and a declaration of Plaintiff's expert in Lebanese law [ECF No. 75].  Defendant submitted a Reply Memorandum of Law. [ECF No. 80] ("Reply") and have also submitted two letters detailing supplemental authorities in further support of its motion.  [ECF Nos. 84, 85].

## LEGAL STANDARD

Defendants move to dismiss the Amended Complaint, arguing lack of personal jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(2), *forum non conveniens*, and failure to state a claim pursuant FRCP 12(b)(6).

**Lack of Personal Jurisdiction Under Rule 12(b)(2)**

Upon a Rule 12(b)(2) motion to dismiss, the Court must dismiss an action against any defendant over whom it lacks personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  To survive a Rule 12(b)(2) motion, plaintiffs "bear[] the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted).  Plaintiffs "must establish the court's jurisdiction with respect to each claim asserted."  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

To do so at the pleadings stage, Plaintiffs are required to plead facts sufficient for "a *prima facie* showing" that jurisdiction exists.  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (citation omitted); *see also Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (Courts require that "[a]t this stage of the proceedings" a plaintiff

make a "*prima facie* showing that jurisdiction exists.").  Plaintiffs' *prima facie* showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citing *Chloe v. Queen Bee of Beverly Hills*, LLC, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks omitted)); *see also Troma*, 729 F.3d at 217.

Notably, "[i]n reviewing a Rule 12(b)(2) motion, 'a court may consider documents beyond the pleadings in determining whether personal jurisdiction exists.' "  *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) (quoting *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, No. 11–CV–420, 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012)).  Still, Plaintiffs' allegations must provide "factual specificity necessary to confer jurisdiction."  *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).  "[C]onclusory statements" without any supporting facts are insufficient.  *Id*.  Moreover, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**Failure to State a Claim Under Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  More specifically, plaintiffs must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  If plaintiffs have not "nudged [their] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

6

When considering a motion to dismiss under Rule 12(b)(6), the Court may only consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2679 (2022) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).   The Court must " 'accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor.' " *Siegel v. HSBC North America Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019) (quoting *Giunta v. Dingman*, 893 F.3d 73, 78–79 (2d Cir. 2018)).   However, the Court is " 'not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions.' " *Id.* (quoting *In re Facebook Initial Public Offering Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015)).

**Forum Non Conveniens**

The doctrine of *forum non conveniens* is a discretionary device which allows a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo-und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004); *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000).   "A decision to grant or deny a motion to dismiss a cause of action under the doctrine of *forum non conveniens* lies wholly within the broad discretion of the district court." *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996).

The Second Circuit has "outlined a three-step process to guide the exercise of that discretion." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc)).   First, "a court determines the degree of deference properly accorded to the plaintiff's choice of forum." *Id.* Second, "it considers whether the alternative forum proposed by the defendants is adequate to

adjudicate the parties' dispute." *Id*.  And third, "a court balances the private and public interests in the choice of forum." *Id*.

## ANALYSIS

When the Court is confronted by a motion raising a combination of Rule 12(b) defenses, it addresses the jurisdictional issues before considering whether the complaint states a claim.  *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963); *see also United States ex rel. Donohue v. Carranza*, 585 F. Supp. 3d 383, 386 (S.D.N.Y. 2022); *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 335 (S.D.N.Y. 2008).

## I.    PERSONAL JURISDICTION

District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis.  First, the Court must determine whether the law of the forum state, here, New York's long-arm statute, CPLR Section 302(a), would subject the Defendant to personal jurisdiction.  *See Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).  If New York law would permit the exercise of jurisdiction over the Defendant, the Court must also evaluate whether the exercise of jurisdiction would comport with due process.  *See Daimler AG v. Bauman*, 571 U.S. 117, 117 (2014); *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017).

Plaintiffs assert that Defendant is subject to specific jurisdiction in New York.  First, the Amended Complaint asserts *in personam* jurisdiction over Defendant pursuant to New York's long-arm statute, specifically, CPLR Section 302(a)(1).  Second, the Amended Complaint asserts that jurisdiction is proper pursuant to a *quasi in rem* theory "as a result of the contemplated attachment of certain funds of defendant held in accounts" within New York. Am. Compl. ¶ 13.

8

Am. Compl. ¶¶ 11–12.  Both of Plaintiffs' arguments fail here, and the action is properly dismissed for lack of personal jurisdiction.

### A. *In personam* Jurisdiction

The Court first addresses Plaintiffs' assertion that the Court has *in personam* jurisdiction over the Defendant.  Plaintiffs allege that the Court has specific personal jurisdiction over Defendant under CPLR Section 302(a)(1).

CPLR Section 302(a)(1) confers personal jurisdiction over a defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state," but only "[a]s to *a cause of action arising from*" such a transaction.  N.Y. C.P.L.R. § 302(a)(1) (emphasis added).  To establish personal jurisdiction under Section 302(a)(1), two requirements must be met: (1) the defendant must have transacted business within the state or contract anywhere to supply goods or services in the state; and (2) the claim asserted must arise from that business activity. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 52 N.Y.2d 268, 273, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)); *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015).

Plaintiffs here allege that Defendant is subject to personal jurisdiction pursuant to CPLR 302(a)(1) because (1) Defendant transacts business in New York via its correspondent banks, and (2) Defendant contracted with Plaintiffs to provide banking services in and transfer funds to New York.  Am. Compl. ¶¶ 11–12.  Defendant argues that Plaintiffs' arguments fail in the face of the Second Circuit's ruling in *Daou v. BLC Bank*, 42 F.4th 120, 125–26 (2d Cir. 2022).

In *Daou*, a case factually similar to this case, the Second Circuit affirmed the dismissal of claims against three Lebanese commercial bank defendants for lack of personal jurisdiction under New York's long-arm statute in a lawsuit filed by United States resident bank customers arising

from Lebanon's financial crisis. 42 F.4th 120, 125–26 (2d Cir. 2022).  Like Plaintiffs here, the
*Daou* plaintiffs asserted a claim for breach of contract based on the banks' failure to comply with
the plaintiffs' instructions and alleged rights to have their U.S. dollars transferred to the United
States and the banks' failure to fulfill promises to make these transfers, which would have involved
accounts in New York.  *Id*.  The *Daou* plaintiffs argued that the defendant-banks' New York
correspondent account transfers on behalf of the plaintiffs established personal jurisdiction.  *Id*. at
128.  Specifically, the plaintiffs argued that two of the defendant-banks were subject to personal
jurisdiction because each allegedly routed several transactions with the plaintiffs through New
York correspondent accounts.  *Id*. at 126.

The Second Circuit rejected the *Daou* plaintiffs' argument, holding that there was
"insufficient *connection* between the [plaintiffs]' claims against the . . . [defendant] Banks and
those banks' business transactions in New York."  *Id*. at 125 (emphasis added).  In other words,
the Second Circuit found that while plaintiffs sufficiently alleged that the defendant-banks
"transacted business within the state" under CPLR 302(a)(1), they did not adequately allege that
their claims alleging failure to make subsequent transfers "*arose from*" the defendant-banks' use
of correspondent accounts in New York.  *Id*.

Prior to and after *Daou*, New York federal and state courts have similarly dismissed
customer lawsuits arising from Lebanon's financial crisis for lack of personal jurisdiction over
Lebanese commercial banks under both New York's long-arm statute and on due process grounds.
*See e.g., Daou v. BLC Bank, S.A.L.*, 2021 WL 1338772 (S.D.N.Y. 2021), *aff'd* 42 F.4th 120 (2d
Cir. 2022); *Moussaoui*, 2023 WL 5977239; *Elghossain v. Bank Audi S.A.L.*, No. 21-CV-2162, 2023
WL 3005524, at *12 (S.D.N.Y. 2023), *report and recommendation adopted*, No. 21-ACV-2162,
2023 WL 6390160 (S.D.N.Y. 2023); *Chaar v. Arab Bank, PLC, et al.*, 2022 WL 3104606 (N.Y.

Sup. Ct. N.Y. Cnty. 2022); *Trans Atlantic Imaging S.A.L. v. Banque MISR Liban S.A.L.*, 2021 WL 2435887, (Sup. Ct. N.Y. Cnty. 2021); *Malaeb v. Bankmed S.A.L.*, 2021 WL 1925638 (N.Y. Sup. Ct. N.Y. Cnty. 2021).

Here, relying on an affidavit submitted in opposition of Defendants' motion to dismiss, Plaintiffs point to a small number of New York correspondent account transfers involving their accounts. *See* Declaration of Neal Kronley [ECF No. 66] ("Kronley Decl"), Ex. 5, 6. Specifically, prior to the actual alleged contract breaches in October 2019, there was one transfer to the United States involving New York correspondent accounts (and three transfers in total) under Plaintiff Patricia Raad's banking relationship with Defendant. Kronley Decl., Ex. 5, 6. For Plaintiff David Raad, there is one transaction, and for Plaintiff Stephanie Raad, there are three transactions in New York correspondent accounts. Kronley Decl., Ex. 5, 6.

Where Plaintiffs fall short, however, is their lack of factual allegations supporting the position that their claims in this case "arose *from*" Bank Audi's *use* of correspondent accounts in these earlier New York transactions. *Daou*, 42 F.4th at 130, 132 (emphasizing that "not every conceivable connection to a New York transaction is substantial enough to confer jurisdiction"). In actuality, Plaintiffs' claim "turn[s] on alleged measures taken *by Lebanese banks in Lebanon* to ensure that USD deposits remained in" Lebanon. *Id.* The Amended Complaint, "does not include a single allegation that [Defendant] used an actual, specific transaction through a New York correspondent account *in the course of bringing about* the injuries on which the claims are predicated." *Id.* As in *Daou*, Plaintiffs here fail to identify "an alleged actual transaction made" through the New York accounts that "*formed part of the alleged unlawful course of conduct underlying the cause of action* set out in the complaint." *Id.* at 130 (emphasis added).

Ultimately, Plaintiffs' inability to withdraw funds in U.S. dollars from their accounts in Lebanon was not caused by Defendant's possession of correspondent bank accounts in the United States or the prior transfers into Plaintiffs' New York accounts.  Rather, the record shows that Defendant's alleged "breach" of the agreement was precipitated by *Lebanon's* banking crisis and *Lebanon's* corresponding regulations within *Lebanon's* banking sector.  *See Moussaoui*, 2023 WL 5977239, at *7.

Plaintiffs' attempt to distinguish itself from the plentiful decisions dismissing commercial lawsuits for lack of personal jurisdiction over Lebanese commercial banks is unavailing.  Indeed, the decision of the Second Circuit in *Daou*—which is factually analogous to this case—makes clear that Bank Audi is not subject to personal jurisdiction in New York.  In an unpersuasive attempt to distinguish their case from *Daou*, Plaintiffs argue that unlike the *Daou* plaintiffs, they are New York residents and Bank Audi was aware of Plaintiffs' "comings and goings from New York" and their " 'residential' addresses in New York."  Opp. at 6–7.  But Plaintiffs may not impute their own New York connections to Defendant to establish personal jurisdiction over Defendant.

Plaintiffs additionally argue that they specifically contracted with Bank Audi for the purpose of transferring their funds in Lebanon accounts to New York.  Opp. at 2.  Plaintiffs merely allege that Stephanie and David Raad opened bank accounts at Bank Audi in Lebanon for the purpose of receiving the trust's principal at expiration, "*under the understanding* that Bank Audi will transfer the funds to New York at their first demand."  Am. Compl. ¶ 19; *see also* Am. Compl. ¶ 20 ("Stephanie and David opened bank accounts at Interaudi Bank in New York for the purpose of transferring the trust funds from Lebanon to New York upon receipt.").  However, "an agreement to send payments to New York, without more, cannot constitute 'transacting business' under section 302(a)(1)."  *Ljungkvist v. Rainey Kelly Campbell Roalfe/Young & Rubicam, Ltd.*, 2001 WL

1254839, at *3 (S.D.N.Y. 2001); *Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*, 2 F. Supp. 2d 470 (S.D.N.Y. 1998) ("merely sending payment to New York is not sufficient to establish personal jurisdiction" under section 302(a)(1)).

Notably, the account Agreements here say nothing whatsoever about Defendant's obligation to send payment to New York, nor do Plaintiffs attempt to argue that they do.  "[T]he wiring of payments to New York by the [d]efendant as a 'passive accommodation' to the plaintiff, rather than a contractual obligation" "does not establish the requisite purposeful activity to justify the exercise of personal jurisdiction under C.P.L.R. § 302(a)(1)."  *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 60 (S.D.N.Y. 1999); *Continental Field Serv. Corp. v. ITEC Int'l, Inc.*, 894 F. Supp. 151, 154 (S.D.N.Y. 1995); *Colson Services Corp. v. Bank of Baltimore*, 712 F. Supp. 28, 31 (S.D.N.Y. 1989).

Nor can Plaintiffs' argument that they contracted with Bank Audi for the purpose of transferring their funds in Lebanon to New York satisfy the prong of CPLR 302(a)(1), which confers personal jurisdiction over a defendant who "*contracts* anywhere to supply goods or services in the state . . . [a]s to a cause of action arising from" such a contract.  N.Y. C.P.L.R. § 302(a)(1) (emphasis added).  This prong of CPLR 302(a)(1) is inapplicable here, where the service at issue in this action—*i.e.*, the transfer of funds—allegedly was to—and failed to—happen in Lebanon.  *See* Am. Compl. ¶ 28.  As such, Plaintiffs have failed to allege that the Court has specific personal jurisdiction over Defendant under CPLR Section 302(a)(1).

### B.  *Quasi in Rem* Jurisdiction

Plaintiffs next assert that jurisdiction is proper pursuant to a *quasi in rem* theory "as a result of the contemplated attachment of certain funds of defendant held in accounts" within New York. Am. Compl. ¶ 13.

"[Q]uasi in rem jurisdiction is traditionally based on attachment or seizure of property present in the jurisdiction, not on contacts between the defendant and the State." *Shaffer v. Heitner*, 433 U.S. 186, 196 (1977). The doctrine allows the Court to establish jurisdiction over a party based upon its power over property within its territory. *Id*. at 199; *Allied Maritime, Inc. v. Descatrade SA*, 620 F.3d 70, 74 (2d Cir. 2010). In support of *quasi in rem* jurisdiction, the property pointed to as the basis for jurisdiction must be *related* to the plaintiff's cause of action; the presence of the property alone is not enough to support jurisdiction. *Shaffer*, 433 U.S. at 209; *see also Glencore AG v. Bharat Aluminum Co. Ltd.*, 10-cv-5251, 2010 WL 4323264, at *5 (S.D.N.Y. 2010). Moreover, if a defendant has property in the state, the Court must still consider whether the exercise of jurisdiction over the Defendant would offend the Due Process clause of the Fourteenth Amendment. *Daimler*, 571 U.S. at 117. In short, the Court must ensure that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Id*.

As set forth above, Plaintiffs do not sufficiently allege that the funds in Bank Audi's New York accounts are tied to the specific claim set out in their complaint. Plaintiffs broadly allege that "Bank Audi uses The Bank of New York Mellon; Citibank, N.A.; JPMorgan Chase Bank, N.A.; and Standard Chartered Bank as its correspondent banks to conduct business in New York" and that "Bank Audi's largest stake (30% of the share capital) is held by the Bank of New York Mellon in its capacity as depositary under the Bank's GDR program." Am. Compl. ¶¶ 8–9. However, Plaintiffs have failed to allege that any of those accounts or funds are tied in any way to the purported harms they experienced as set forth in the Amended Complaint.

In other words, the Amended Complaint does not include any allegation that Defendant's New York correspondent accounts are in any way related to—or caused—the injuries on which their claim is predicated. *See Shaffer*, 433 U.S. at 209; *see also Kreit v. Byblos Bank S.A.L.*, No.

22-CV-10751, 2023 WL 6977448, at *2 (S.D.N.Y. 2023) (denying to exercise *quasi in rem* jurisdiction over defendant Lebanese bank because plaintiff had failed to establish the requisite nexus between the forum and the litigation); *Moussaoui*, 2023 WL 5977239, at *8 (same).  As stated above, here, as in *Daou*—where the Second Circuit found personal jurisdiction lacking— Plaintiffs' sole claim "turn[s] on alleged measures taken *by Lebanese banks in Lebanon* to ensure that USD deposits remained" *in Lebanon*.  *Daou*, 42 F.4th at 130, 132.  Plaintiffs fail to allege that the funds they seek to recover in *this* action—which have never left Lebanon—are related to Defendant's correspondent accounts in New York.

Additionally, the case law in this District consistently sets out that *quasi in rem* jurisdiction is not proper where an order of attachment is not in place and the property at issue has not otherwise been seized.  *See e.g.*, *Manichaean Cap., LLC v. SourceHOV Holdings, Inc.*, No. 20-CV-5679, 2021 WL 276674, at *2 (S.D.N.Y. 2021) (stating that New York law permits *quasi in rem* jurisdiction over a nondomiciliary defendant where a levy upon the property of the defendant has been made pursuant to an order of attachment or a seizure); *see also Concord Line Co. v. Just Oil & Grain Pte Ltd.*, No. 08-CV-5035, 2010 WL 2382414, at *2 (S.D.N.Y. 2010); *Moussaoui*, 2023 WL 5977239, at *8.  Indeed, Plaintiffs filed a motion for attachment in the Supreme Court of the State of New York, New York County prior to this action's removal in December 2020.  [ECF No. 24].  That motion, however, was subsequently mooted when the district court granted Defendant's motion to dismiss the action in September 2021.[4]  *See e.g.*, *Raad*, 2021 WL 4482285, at *4. However, in the over fourteen months since the Second Circuit vacated the district court's decision, Plaintiffs have not renewed their motion for attachment.

---

[4] Plaintiffs note that they have "obtained a pre-judgment attachment of funds held by Defendants *in France*, to execute against a judgment that this Court may issue in favor of the Raads in this case."  Opp. at 12.  However, attachment of funds located *in France* offer no basis for the Court to exercise *quasi in rem* jurisdiction over Defendants *in New York*.

For the aforementioned reasons, Plaintiffs have failed to sufficiently plead that the Court has either *in personam* or *quasi in rem* jurisdiction over Defendants in this action.

## II.     FORUM NON CONVENIENS

Even if the Court could exercise personal jurisdiction over Defendant, Bank Audi sets forth persuasive arguments that New York is likely an improper forum pursuant to the doctrine of *forum non conveniens*.   At this juncture, the parties dispute whether the forum-selection clauses, contained in the several Agreements at issue, were mandatory or permissive due to the fact that the record contains several competing translations of the clause.   *See e.g.*, *Raad*, 2021 WL 4482285, at *3 n.2; Def. Br. at 17; Opp. at 13–14.   Given this dispute, and because the Court concludes here that it cannot exercise personal jurisdiction over these defendants, it need not decide whether the clause governs here.

Nevertheless, the Court underscores that Plaintiffs opened the bank accounts and signed the Agreements at issue in Lebanon with a Lebanese commercial bank that has virtually no New York presence.[5]  *See* Am. Compl. ¶ 19; Declaration of Meouchy [ECF No. 67] ("Meouchy Decl."), Ex. 4 ¶¶ 4, 8.   In fact, on the relevant Agreements, Plaintiffs identified Lebanon as their official place of residence (although they argue that Defendants induced them to do so).   Meouchy Decl., ¶¶ 11, 14, 16 & Exs. 1–6.   In October and November 2019, after the onset of the Lebanon financial crisis, Plaintiffs, *while physically in Lebanon*, submitted requests to Bank Audi to transfer funds from their accounts in Lebanon to bank accounts in New York.   [ECF No. 1-4 at 28–33].   As such, it appears that many—if not all—witnesses and documents are located in Lebanon, where all relevant events took place.

---

[5] The Bank has no agencies, branches, employees, representatives, or representative offices in New York.   *See* Meouchy Decl. at ¶ 6.

Additionally, as Defendant emphasizes, Lebanon has a unique, important public policy interest in hearing this dispute due to the relationship between Plaintiffs' claim and the ongoing crisis taking place there.  Def. Br. at 20; *see also Daou*, 2021 WL 1338772; *Chaar*, 2022 WL 3104606, at *3–4; *Trans Atlantic Imaging S.A.L.*, 2021 WL 2435887, at *3; *Malaeb*, 2021 WL 1925638, at *11–12; *Moussaoui*, 2023 WL 5977239, at *9.  As Defendant notes, Plaintiffs' claims "implicate Central Bank regulations and the authority of the Central Bank to regulate within Lebanon's borders."  Def. Br. at 20.  Finally, Plaintiff affirmatively concedes that their claim will undoubtedly require an analysis of Lebanese law.  *See* Am. Compl. at 5.  All these considerations likely warrant the exercise of discretion by the Court to dismiss this case under the doctrine of *forum non conveniens*.  *Carey*, 370 F.3d at 237; *Norex*, 416 F.3d at 153.

## III.   FAILURE TO STATE A CLAIM

Because the Court grants the Defendant's motion to dismiss for lack of personal jurisdiction, it does not address the arguments that Plaintiffs' claims are otherwise insufficiently pleaded pursuant to Rule 12(b)(6).  *See Darby Trading*, 568 F. Supp. 2d at 335 (citations omitted).

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction is GRANTED.  The Clerk of Court is respectfully requested to terminate docket entry 64 and close this case.

**SO ORDERED.**

Date:  March 5, 2024
         New York, NY

**MARY KAY VYSKOCIL**
**United States District Judge**

17